USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___12/3/2025___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEJANDRO ORTEGA,

                    Plaintiff,

           -against-

2&5 LINE DELI GROCERY, INC., et al.,

                    Defendants.

22-CV-09170 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Alejandro Ortega ("Plaintiff") brought this action against his former employer, 2&5 Line Deli Grocery, Inc., and its owner Aziz Saleh Alzubaidi (together, "Defendants"), alleging violations of the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). A jury trial was held on July 21–24, 2025. At trial, the jury found Defendants liable under the NYLL for failing to pay overtime wages and failing to provide wage statements. The jury awarded Plaintiff $87,490 in damages and the Court issued a judgment of damages and pre-judgment interest in the amount of $109,106.02. Following trial, Plaintiff filed a motion for attorney's fees (Dkt. No. 101) and a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) (Dkt. No. 105). Both unopposed post-trial motions are presently before the Court.

1

## BACKGROUND

### I.    RELEVANT FACTS[1] AND PROCEDURAL HISTORY

Plaintiff initiated this action on October 26, 2022, alleging that Defendant 2&5 Line Deli Grocery violated the FLSA and NYLL by (i) failing to pay minimum wages; (ii) failing to pay overtime wages; (iii) failing to provide notice of the rate of pay at the time of hiring; and (iv) failing to provide wage statements. *See* Dkt. No. 1. On April 9, 2024, Plaintiff amended his Complaint to add Aziz Saleh Alzubaidi as a Defendant. *See* Dkt. No. 39.

Trial began with jury selection on July 22, 2025, and lasted three days. Dkt. No. 88. The Court held a charge conference with counsel on the final day of trial. *See* Dkt. No. 94 at 210:9; *see also* Dkt. No. 88-5; Dkt. No. 92 at 167:14–17. At the charge conference, Plaintiff raised two issues with respect to the Court's proposed jury instructions. First, Plaintiff noted that the evidence presented at trial may not be sufficient to establish the coverage required for FLSA claims. *See* Dkt. No. 94 at 210:25–211:7. In the ensuing discussion, Plaintiff agreed that the FLSA claims should not go to the jury, and consented to the Court instructing the jury on the NYLL claims alone. *Id.* at 211:8–24. Second, Plaintiff asked whether there was a dispute as to whether Mr. Alzubaidi was Plaintiff's employer.[2] *Id.* at 212:5–9. Defendants' counsel stated that the jury could "infer that Mr. Alzubaidi was [Plaintiff's] employer" but that he "would like [the jury] to decide it." *Id.* at 213:2–5. The Court asked whether Plaintiff had any other issues with the proposed instructions. *Id.* at 213:7–10. Plaintiff's counsel responded, "Everything else

---

[1] The following facts are taken from the transcript of the trial held on July 22–24, 2025 (Dkt. Nos. 90–94) as well as the undisputed facts to which the parties stipulated (Dkt. No. 88-1).

[2] The parties had previously stipulated that 2&5 Line Deli Grocery was Plaintiff's employer, but their stipulation did not address whether Mr. Alzubaidi, in his individual capacity, was also Plaintiff's employer. Dkt. No. 88-1.

seems fine to me." *Id.* at 213:11–12. Counsel for Defendants raised no further issues or objections. *Id.* at 214:5–12.

Following the charge conference, the Court revised the jury instructions to remove instructions related to all claims other than Plaintiff's NYLL claims and distributed the revised charge, along with a redline of the changes, to counsel. *Id.* at 215:4–5. After distributing the revised charge and redline, the Court asked the parties if they had "[a]ny objections to the charge as it stands now." *Id.* at 215:4–8. Neither party raised objections. *Id.* The Court subsequently delivered the revised instructions to the jury. *Id.* at 215:16–17. The instructions included an explanation of the damages available to Plaintiff. The Court first explained that Plaintiff would be entitled to compensatory damages if the jury found that "one or more of the defendants is liable under Plaintiff's Minimum Wage or Overtime Claims." *Id.* at 245:14–19. The Court stated that these damages would cover "the amount of wages the plaintiff was entitled to receive under the law, minus the payment he actually received for the work performed." *Id.*

The Court also instructed the jury that Plaintiff may be entitled to liquidated damages. *Id.* at 249:17–23. Specifically, the Court explained that "[t]he New York Labor Law allows for liquidated damages awards equaling up to 100 percent of the wages due for a wage payment violation." *Id.* Accordingly, the Court instructed the jury that if "plaintiff has proven his Minimum Wage Claims or his Overtime Pay Claims, then you may also award liquidated damages on those claims up to the same amount of any compensatory damages you found for a given claim." *Id.* at 250:3–6. The Court instructed, however, that "plaintiff cannot recover liquidated damages if you find the defendants acted in good faith." *Id.* at 250:7–18. The Court concluded the liquidated damages instruction by stating "[i]f you determine that defendants did not act in good faith, then you can award up to 100 percent owed to the plaintiff in compensatory

[damages] as additional liquidated damages." *Id.* at 250:19–21. The Court's instructions to the jury on liquidated damages were substantially identical to those distributed to counsel, in both the original and revised versions. *See* Dkt. No. 88-6 at 31–32.

Following the jury charge, counsel for both parties delivered closing arguments. *See* Dkt. No. 94 at 251:24–25; 255:15–19. At the conclusion of closing arguments, the Court sent the jury to deliberate. *See id.* at 257:23–24; 261:19–21. The jury was provided with a verdict form to record its final verdict. *Id.* at 259:1–3.[3] The verdict form separated each of the four causes of action remaining in the case and provided spaces to record the jury's findings on liability and damages for each cause of action. Dkt. No. 88-8. The first cause of action on the verdict sheet was "minimum wages," reflecting Plaintiff's allegation of minimum wage violations under the NYLL, and the second was "unpaid overtime wages," reflecting Plaintiff's allegation of failure to pay overtime wages under the NYLL. *Id.* at 1–2.

The verdict form included four questions for each of these two causes of action. The first two questions inquired about liability; they asked whether the jury found for Plaintiff against each Defendant on the cause of action. *Id.* The second two questions asked for the jury's verdict on damages. For the unpaid overtime cause of action, the verdict sheet asked "if you found for Alejandro Ortega on the Second Cause of Action, what is the amount of his compensatory damages as to Unpaid Overtime Wages?" *Id.* at 2. Next, it asked "[i]f you found for Alejandro Ortega on the Second Cause of Action, **and** awarded compensatory damages, **and** found Defendants were <u>not</u> acting in good faith, what is the amount of his liquidated damages as to Unpaid Overtimes Wages?" *Id.*

---

[3] The final verdict form was distributed to counsel in advance, and no objections were raised by either party. Dkt. No. 94 at 208:4–12.

The jury reached a verdict at 4:04 p.m. on July 22. *Id.* at 4. On the verdict form, the jury indicated that it found for Plaintiff on the second and fourth causes of action, unpaid overtime wages and failure to provide wage statements, respectively. *Id.* at 1–4. The jury awarded $77,490 in compensatory damages for Plaintiff's unpaid overtime wages claim and $5,000 in liquidated damages. *Id.* at 2. The jury also awarded $5,000 in statutory damages for the wage statement violation. *Id.* at 3. After receiving the jury's verdict form, the Court read the verdict aloud and subsequently discharged the jury. Dkt. No. 94 at 262:23–25, 265:6–11. After the jury was discharged, the Court conferred with counsel and requested that Plaintiff's counsel (i) prepare a judgment, including any statutory prejudgment interest that Plaintiff sought, and (ii) file an application for attorney's fees. *Id.* at 266:19–267:17. The Court set a briefing schedule on the application for attorney's fees pursuant to the preferences of counsel. *Id.* at 267:17–268:5. On August 1, 2025, Plaintiff filed a proposed judgment. The judgment sought a total amount of $110,916.70, reflecting $77,490 in compensatory damages, $5,000 in liquidated damages, $5,000 for the wage statement violations, and $23,426.70 in prejudgment interest. Dkt. No. 96.

On August 8, 2025, the Court entered an order stating that judgment would be entered that day, but that it had "come to Court's attention that its jury instruction regarding liquidated damages under New York Labor Law may have erred as to the amount of liquidated damages that should be awarded as a matter of law," and, as a result "this portion of the jury's verdict, and the corresponding judgment, may be legally erroneous." Dkt. No. 97. The Court instructed Plaintiff that, if he wished to move pursuant Federal Rule of Civil Procedure 59(e) to amend the judgment as to liquidated damages, the deadline for that submission was August 22, 2025, and that any such motion should address the issue of waiver. *Id.* The Order also set September 5,

5

2025 as the deadline for Defendants to respond. *Id.* The same day, the Court entered judgment in the amount of $109,106.02. Dkt. No. 98.

On August 8, 2025, Plaintiff submitted an application for attorney's fees. Dkt. Nos. 101–103. Defendants did not oppose the application. On August 20, 2025, Defendants filed a notice of appeal. Dkt No. 104. Plaintiff filed a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) soon after. Dkt. No. 105. Defendants did not oppose the motion and the Second Circuit stayed Defendants' appeal pending resolution of the Rule 59(e) motion. *See* Dkt. No. 106. Plaintiff's application for attorney's fees and Plaintiff's motion to amend the judgment are presently before the Court.

## DISCUSSION

## I. ATTORNEY'S FEES

### A. Legal Standard

A plaintiff who prevails on a wage claim brought under the NYLL is entitled to recover reasonable attorney's fees and costs. NYLL §§ 198(1-a), 663(1); *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 240 (S.D.N.Y. 2020), *report and recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc.*, No. 16-CV-8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). A "reasonable hourly rate" is the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005).

**B. Plaintiff is Awarded Attorney's Fees and Costs**

Plaintiff is entitled to an award of attorney's fees as the prevailing party in this litigation. For actions brought under the NYLL, a plaintiff is the prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009). "A plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint." *Id.* At trial, the jury found in favor of Plaintiff on two of his claims and awarded damages for each. *See* Dkt. No. 88-8. Thus, Plaintiff succeeded on at least two of the "significant issue[s]" in this litigation and achieved some of the damages he "sought in bringing suit." *Kahlil*, 657 F. Supp. 2d at 474. Accordingly, Plaintiff is the prevailing party.

Plaintiff is represented by Lina Stillman, the principal attorney and owner of Stillman Legal P.C. Dkt. No. 103 ¶ 1. Ms. Stillman seeks $48,840 in attorney's fees for 122.10 hours of work billed at a rate of $400 per hour. Both the rate and number of hours expended by Ms. Stillman are reasonable under the lodestar method. First, Ms. Stillman's hourly rate of $400 is commensurate with the prevailing market rate for attorneys of her expertise and experience. *See Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14-CV-2328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015) ("In recent years, courts in this district have awarded rates between $350 and $450 per hour for partners with significant employment litigation experience."); *Lopez v. Emerald Staffing, Inc.*, No. 18-CV-02788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour."). Ms. Stillman founded her own employment litigation practice ten years ago and has particular expertise in wage and hour cases, including significant trial experience. Dkt No. 102 at 5. Multiple courts in this district have found that Ms. Stillman's rate

of $400 per hour is reasonable when considering her experience. *See Pastor v. Sagal Fish Mkt. Inc.*, No. 24-CV-03899 (ER), 2025 WL 1382810, at *2 (S.D.N.Y. Apr. 7, 2025) (finding Ms. Stillman's hourly rate $400 reasonable); *Velasquez v. Baodega LLC*, No. 24-CV-03486 (AT), 2024 WL 4893276, at *2 (S.D.N.Y. Nov. 26, 2024) (same). This Court agrees and finds Ms. Stillman's hourly rate of $400 to be reasonable in light of her expertise and experience.

Second, the number of hours expended on this case is also reasonable. "In determining how much attorney time should be compensated, the court initially looks to the amount of time spent on each category of tasks, as reflected in contemporaneous time records." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015). After reviewing the billing records, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Id.* Here, Ms. Stillman submitted contemporaneous billing records for each hour expended in this case. *See* Dkt. No. 103-3. After conducting a review of each item billed and the time expended, the Court finds that each expenditure was reasonable and similar to what a "reasonable attorney would have expended . . . in pursuit of the case." *Gonzalez*, 112 F. Supp. 3d at 29. Ms. Stillman's expenditures are particularly reasonable in light of the length of this case and the preparation required for trial. Thus, applying the lodestar method, the Court awards $48,840 in attorney's fees.

In addition to attorney's fees, Plaintiff seeks reimbursement for $8,128.51 in costs incurred during the pendency of this litigation. Dkt. No. 102 at 9. "Both the FLSA and New York state law provide for an award of costs." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015). Plaintiff submitted itemized descriptions of each cost incurred as well as relevant invoices. *See* Dkt. Nos. 103-1 & 103-2. The items listed include

subpoena service fees, filing fees, translation costs, and transcript fees. These items are all reasonable costs for which courts have allowed reimbursement in similar cases. *See Apolinario*, 2015 WL 4522984, at \*4 (collecting cases). Thus, the Court awards $8,128.51 in costs, for a total of $56,968.51 in costs and fees.

## II.    PLAINTIFF'S RULE 59 MOTION

### A. Legal Standard

Federal Rule of Civil Procedure 59(e) allows a party file a motion to "alter or amend a judgment" no later than 28 days after the judgment is entered. "[T]he Rule was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982). A motion brought under Rule 59(e) "must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008). Under Rule 59(e), the Court "may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014).

### B. The Jury Instruction on Liquidated Damages Contained a Clear Error of Law

Plaintiff seeks to amend the judgment in this case on the grounds that the Court's jury instruction on liquidated damages was legally erroneous. The Court agrees. The Court instructed the jury that the "New York Labor Law allows for liquidated damages awards equaling *up to* 100 percent of the wages due for a wage payment violation" and stated that the jury could award "liquidated damages . . . *up to* the same amount of any compensatory damages you found" for Plaintiff's Minimum Wage and Overtime Claims. Dkt. No. 94 at 249:17–20,

250:5–6 (emphasis added). Those instructions incorrectly described the amount of liquidated damages provided for under the NYLL.

Sections 198(1-a) and 663(1) of the NYLL provide for awards of liquidated damages. Section 198(1-a) states that, in a wage claim action "in which the employee prevails," the court "shall allow such employee to recover the full amount of any underpayment . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a). Section 663(1) of the NYLL contains substantially similar language. See NYLL § 663(1) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments . . . and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."). Under both sections, the award of liquidated damages is mandatory for a prevailing employee where the employer has not provided a good faith basis to believe that its underpayment of wages was in compliance with the law. Furthermore, under both sections of the NYLL, the amount of liquidated damages to which an employee is entitled is "*equal* to one hundred percent" of the amount of unpaid wages due. NYLL §§ 198(1-a), 663(1) (emphasis added); *see also Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 540 (S.D.N.Y. 2024) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."). Accordingly, instructing the jury that it may award liquidated damages of

10

"up to 100 percent" of the amount of wages due, rather "equal to one hundred percent" of the amount of wages due was a clear error of law.

### C.  The Erroneous Instruction Affected Plaintiff's Substantial Rights

Under Federal Rule of Procedure 51(d)(1) "a party may assign error based on an erroneous jury instruction 'if that party properly objected.'" *Snyder v. New York State Educ. Dep't*, 486 F. App'x 176, 178 (2d Cir. 2012) (quoting Fed. R. Civ. P. 51(d)(1)).  Rule 51 requires an objection to an instruction to be made "on the record" and "stat[e] distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1).  "Rule 51 requires parties to articulate and lodge their objections to jury charges before they are delivered so that the trial court [will have] an opportunity to cure any defects in the instructions before sending the jury to deliberate." *ING Glob.*, 757 F.3d at 97.  Where a party did not properly object to an instruction, "[a] court may consider a plain error in the instructions . . . if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).  "To constitute plain error, a court's action must contravene an established rule of law and go to the very essence of the case." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237 (2d Cir. 2020).  "[F]or a plain error to affect substantial rights there must be a reasonable probability that the error affected the outcome of the trial." *Hester v. Kelly*, No. 24-570, 2025 WL 1949963, at *3 (2d Cir. July 16, 2025).

Plaintiff did not object to the jury instruction on liquidated damages, properly or otherwise.  To properly object to an instruction, the objection must be made "on the record." Fed. R. Civ. P. 51(c)(1).  Plaintiff was presented with multiple opportunities to object to the Court's instruction on liquidated damages on the record—including in Plaintiff's written requests to charge, at the charge conference, and following the Court's distribution of the revised charge—but did not do so at any time during trial.  Nonetheless, the Court may still consider amending the judgment in light of the erroneous instruction if the error was "plain" and "affected

11

substantial rights." Fed. R. Civ. P. 51(d)(2). Both criteria are met as to the liquidated damages instruction.

First, the instruction contained plain error because it "contravene[d] an established rule of law." *Yukos Cap. S.A.R.L*, 977 F.3d at 237. It suggested to the jury that the amount of liquidated damages available under the NYLL was discretionary when the statute clearly states that, absent a showing of good faith, a prevailing plaintiff must be awarded liquidated damages in the same amount as the compensatory damages awarded. This instruction went to "the very essence of the case" because it concerned the damages available to Plaintiff. *Id.* Second, the error "affected substantial rights." Fed. R. Civ. P. 51(d)(2). The jury's award clearly showed that it found a lack of good faith on the part of Defendants, because it awarded some amount of liquidated damages. Dkt. No. 88-8 at 2. No speculation is required to conclude that, had the jury been properly instructed, it would have awarded Plaintiff the same amount in liquidated damages that it awarded in compensatory damages. Instead, its award of $5,000 was 94 percent less than the $77,490 it should have awarded under the law. *Id.* The erroneous instruction clearly affected the amount of the jury's damages award and thus Plaintiff's substantial rights.

### D. Amending the Judgment Would Not Alter the Jury's Findings

Plaintiff seeks to amend the judgment to increase the liquidated damages award to $77,490. Dkt. No. 105-1 at 8. While ordinarily a district court may not increase a jury's damages award, this case falls within the limited circumstances in which doing so is permissible under Second Circuit case law. In *Dimick v. Schiedt*, 293 U.S. 474 (1935), the Supreme Court ruled that increasing a jury's damages award through additur is impermissible. *See Liriano v. Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999) ("Under the rule of *Dimick*. . . federal courts are denied the same freedom to use additur that is enjoyed by many state court judges."). *Dimick* barred the use of additur on the grounds that the practice violated the Seventh Amendment's re-

12

examination clause. *Dimick*, 293 U.S. at 482; *Cf Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 632 (E.D.N.Y. 2020) ("The *Dimick* court was concerned that unilateral increases of damages erode the 'controlling distinction' between court and jury, namely, the power of the court 'to determine the law and the power of the jury to determine the facts.'") (quoting *Dimick*, 293 U.S. at 486).

The Second Circuit has since recognized narrow circumstances in which a court may adjust a damages award upward "without running afoul of *Dimick*." *Liriano v. Hobart Corp.*, 170 F.3d 264, 273 (2d Cir. 1999). In *Gibeau v. Nellis*, the Second Circuit remanded a case to the district court after a jury trial "to award nominal damages contrary to the jury verdict." 18 F.3d 107, 111 (2d Cir. 1994). The nominal damages were "compelled by law upon proof of a substantive constitutional violation." *Id.* "Because nominal damages are mandatory" under the circumstances of the case, the court explained, "our decision does not impermissibly invade the province of the jury." *Id.* Similarly, in *Liriano v. Hobart Corp.*, the Second Circuit affirmed a district court's adjustment of a jury award "to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there was no dispute." 170 F.3d at 273. In so ruling, the court explained that "[w]hen a jury has already found liability, federal courts may make such adjustments without running afoul of *Dimick*." *Id.*

This case falls within the circumstances described in *Liriano* and *Gibeau* in which a court may adjust a damages award without infringing on the province of the jury. Here, the jury "has already found liability." *Id.* On the verdict sheet, the jury was asked "[d]o you find for Alejandro Ortega on the Second Cause of Action [Unpaid Overtime Wages] against Defendant 2&5 Line Deli Grocery Inc."? Dkt. No. 88-8 at 2. The jury answered "yes." *Id.* The verdict form included the same question as to Defendant Aziz Saleh Alzubaidi. *Id.* The jury again

13

answered "yes." *Id.* The Court instructed the jury that it should award compensatory damages "[i]f you find the plaintiff has proven his Overtime Claim" and should award "the amount of wages the plaintiff was entitled to receive under the law, minus the payment he actually received for the work performed." Dkt. No. 94 at 245:16–18. 247:9–11. The Court also provided the jury a worksheet to assist them in calculating the correct amount of compensatory damages if they found liability. By awarding compensatory damages, the jury affirmed its finding that Plaintiff had proven his claim for unpaid overtime wages and was owed $77,490 in unpaid wages.

Adjusting the damages award to increase the liquidated damages to match the amount of compensatory damages ($77,490) would not infringe upon the fact-finding role of the jury. The jury was specifically instructed, both in the Court's legal instructions and on the verdict form, that they could award liquidated damages only if they found liability, an amount of compensatory damages owed, and a lack of good faith. *See* Dkt. No. 88-8 at 2 ("If you found for Alejandro Ortega on the Second Cause of Action, **and** awarded compensatory damages, **and** found Defendants were <u>not</u> acting in good faith, what is the amount of his liquidated damages as to Unpaid Overtimes Wages?") (emphasis in original); Dkt. No. 94 at 250:7–8 ("[T]he plaintiff cannot recover liquidated damages if you find the defendants acted in good faith"). By awarding Plaintiff some amount in liquidated damages, the jury necessarily made each factual finding to award Plaintiff liquidated damages as a matter of law: liability on the part of Defendants, that Plaintiff was owed $77,490 in unpaid wages, and that Plaintiff was entitled to an award of liquidated damages for his overtime wages claim because Defendants did not act in good faith.

These clear findings of fact—that Plaintiff was owed $77,490 in unpaid wages, and Defendants did not act in good faith—make an award of $77,490 in liquidated damages mandatory under the law, without any further fact-finding or speculation by the Court. *See*

14

*Romero v. Floris Constr., Inc.*, No. 16-CV-04282 (PKC) (RLM), 2017 WL 5592681, at *8 (E.D.N.Y. Nov. 20, 2017) ("[The] NYLL requires liquidated damages absent a showing of good faith."); *Zhang v. Hiro Sushi at Ollies, Inc.*, No. 17-CV-07066 (JPC), 2022 WL 2668263, at *12 (S.D.N.Y. July 11, 2022) ("The NYLL also allows for liquidated damages awards equaling one hundred percent of the wages due, with an exception for good faith."). Because the jury undisputedly made the necessary fact findings to award $77,490 in liquidated damages, amending the judgment to include that amount would not "impermissibly invade the province of the jury." *Gibeau*, 18 F.3d at 111. Instead, like in *Gibeau*, the Court can and should amend the damages award to include the amount "compelled by law" and "mandatory" based on the jury's findings. *Id.* Accordingly, Plaintiff's motion to amend the judgment to increase the amount of liquidated damages to $77,490 is GRANTED.

## CONCLUSION

Plaintiff's application for attorney's fees is GRANTED in the amount of $56,968.51 in attorney's fees and costs. Plaintiff's Motion to Amend and/or Correct Judgment is also GRANTED.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 101 & 105, and enter a new judgment that reflects $77,490 in liquidated damages and a corresponding adjustment of the pre-judgment interest owed.

Dated: December 3, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge